THE PUERTO RICO INDUSTRIAL DEVELOPMENT CO., and THE PUERTO RICO CEMENT CORPORATION, Appellants, *v.* THE REGISTRAR OF PROPERTY OF BAYAMÓN, Respondent.

No. 1293.   Submitted March 4, 1953.—Decided April 21, 1953.

*Carlos A. Vallecillo* and *F. J. Pérez Almiroty* for petitioners. The respondent Registrar appeared by brief.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

The Puerto Rico Industrial Development Company presented in the Registry of Property of Bayamón deed No. 4 executed in San Juan on September 14, 1951, before Notary Carlos A. Vallecillo, in order to obtain the registration of a

mortgage constituted in its favor on eight properties and other estates belonging to the Puerto Rico Cement Corporation, to secure the payment of a mortgage note executed by the latter for the sum of $6,006,255.39, interest thereon at 4 per cent annually as stipulated therein, the sum of $25,000 for costs, expenses and attorney's fees in case of litigation and $20,000 for default interest at the legal rate. The respondent Registrar returned said document "without making any entry whatsoever" on the ground that the amount of fees to be paid for the registration of said mortgage, according to the schedule of fees, was $2,864.50 and not $564.50 which was the amount deposited, and that petitioner had refused to deposit the difference upon being required to do so.

The petitioner appeals and asks us to order the registration of the deed. It contends that it deposited the fees required by the schedule of fees for said service. Let us see.

The Act of March 10, 1904, "Assigning Salaries to the Registrars of Property, and for other purposes," as amended in its § 22—which fixes the schedule of fees to be charged for the services of the registrars of property—by Act No. 102 of May 12, 1943, provided under Number Five of said schedule that "For each record or entry and corresponding marginal notes, not embodied in the preceding numbers, the fixed amounts established by the following schedules shall be charged:

|  | "Record or entries in full | Record or entries in abstracts. |
|---|---|---|
| "For each estate or right valued at less than one hundred dollars | $0.50 | $0.25 |
| "From more than $100 to $200 | 1.00 | 0.50 |
| "From more than $200 to $500 | 2.00 | 1.00 |
| " . . . . . . . |  |  |
| "From more than $25,000 to $300,000 | 25.00 | 22.00 |
| " . . . . . . . |  |  |
| "From more than $900,000 to $1,000,000 | 300.00 | 275.00 |
| "Over $1,000,000 | 500.00 | 450.00" |

There is no controversy as to the fact that petitioner herein seeks a record in full subject to Number Five of the

schedule. There is no question either that the fees to be charged for the registration of the lien on seven of the eight mortgaged properties amount to $64.50.

The controversy herein centers on the fees that must be paid for the registration of the aforesaid mortgage on the part which affects only one of the properties: the one described in the deed as property "A," which answers for the sum of $5,926,255.39 as principal, for the credit of $20,000 for default interest, if any, and for the sum of $25,000 for costs, expenses and attorney's fees in case of litigation. The Registrar contends that pursuant to the above-copied schedule the fees that must be charged for each million dollars of mortgage credit to be recorded as to said property are $500, in other words, $2,500 for the first five millions and $300.00 for a fraction of the remaining million, totalling $2,800.

On the other hand, petitioner urges that since the value of the mortgage credit sought to be recorded as to property "A," is "over $1,000,000," according to the schedule copied above, the fees to be charged for said registration are only $500.

We agree with petitioner. The Registrar can not demand a larger amount of fees than those required by law. The schedule established by Number Five of the Schedule, contrary to that established by Number Three thereof[1], does not

---

[1] Number Three of said schedule of fees provides, among other things: "For all work of whatever kind which should be made at the instance of an interested party for the cancellation or clearing of mortgages, annuities (*censos*) or property rights, including the entry of presentation and marginal notes, the following fees shall be charged for each estate:

"(*a*) If the estate or right is valued at less than five-hundred dollars ............................................. $2.00

"(*b*) From five hundred to one thousand dollars .............. 2.50

" . . . . . . .

"(*m*) From more than twenty thousand to thirty thousand dollars ......................................... 12.00*

"(*n*) *For each additional one thousand dollars or fraction thereof, $0.50 additional shall be charged.* [Italics ours.]"

* Thus in the original.

provide for any additional fee for an increase of value progressively in excess of one million dollars. On the contrary: it fixes $500 as the fees to be charged for any record or entry in full when the value of the property or right to be recorded or entered, exceeds one million dollars, with no provision regulating progressively any value exceeding said amount, nor fixing any additional amount thereon for the payment of fees.

The statute is clear, precise and leaves no margin for construction. As stated by Mr. Justice Córdova Dávila in *P. R. Am. Sugar Refinery Inc.* v. *Domenech, Treas.*, 46 P.R.R. 582, 589: "The letter of the statute is so clear as to strike the eye like light." The Registrar can not substitute his own notions for the express intention of the Legislature. When the value of the property or right sought to be recorded or entered exceeds a million dollars, regardless of the amount in excess thereof, the fixed sum shall be charged: $500 for a record or entry in full and $450 in abstract form, and nothing more. Since we are dealing here with a record in full, the fees that shall be paid, as to the record of the mortgage credit affecting property "A", are $500.

The appellant also complains that the Registrar returned the deed "without making any entry whatsoever," in violation of the law, since it was entitled to a cautionary notice for 120 days. The Registrar, when referring to this question, states in his brief that "In this case the statute impliedly grants petitioners the term of 120 days and the Registrar has no need to so state in his decision; he merely suspends any action on the document presented to the Registry where the fees established in the schedule have not been deposited." [2] This is not an adequate answer. The Act Assigning Salaries

---

[2] The Registrar adds at the next breath: "For this reason we believe that no prejudice is caused to appellants by not passing definitively on the title in this Registry, since we have no other ground for refusing record than the failure to deposit the fees fixed in Number 5 of the aforesaid tariff of fees."

to the Registrars of Property, etc., as amended by Act No. 39 of April 23 of 1928 (p. 232), provides the following in § 24 thereof:

"The amount of the fees which the schedule of fees prescribes for the different services shall be paid in internal revenue stamps, as herein prescribed, on the presentation of any document to be recorded or entered in the registry, or when any certificate is solicited, and the registrar shall fix and cancel all stamps paid for services rendered, and he shall return, uncancelled, to the interested party any stamps which it may not be necessary to use. *If, at the time of effecting the operation in the registry, the registrar should need more stamps than those deposited by the interested party, the registrar shall require such party to deposit the difference, and if the latter should not make the deposit within the time that the entry of presentation is in force, the registrar shall suspend the record or entry by means of a note on the margin of the entry of presentation, in which be shall state his reasons. This note shall be in effect for one hundred and twenty days and from it an appeal may be taken to the Supreme Court following the procedure established in the Act to provide for appeals against the decisions of registrars of property, approved March 1, 1902. If the note is reversed, the registrar shall proceed to record or enter the document, and in case it is affirmed, the interested party, in order to obtain the record or entry, shall have to deposit in stamps the difference required by the registrar.*" (Italics ours.)

As we may see from the foregoing statutory provision, it is the duty of the Registrar to suspend the record or entry—in the cases where the fees deposited at the time of presenting the document are insufficient and the difference is not deposited by the interested party upon being requested to do so—"by means *of a note on the margin* of the entry of presentation, *in which he shall state his reasons*," which note shall be for 120 days, and an appeal may be taken to this Court. This is a mandate of the law which must be strictly complied with by the Registrar without any excuse. The reasons for suspending the record or entry must be stated

616

in the note on the margin of the entry of presentation. And this provision does not authorize the Registrar, in attempting to act under color of authority, to return the deed "without making any entry whatsoever," for although the record sought is not made because the statute requires that it be suspended, the statute likewise requires that an entry be made: the marginal note on the entry of presentation stating the reasons for the suspension. And this note stating the reasons must appear in the Registry.

For the reasons stated, the Registrar's note will be reversed and the document in question recorded.